**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kelly Ann Tyler,<br><br>              Plaintiff,<br><br>v.<br><br>United States Life Insurance Company in the City of New York, et al.,<br><br>              Defendants. | No. CV-16-00939-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Defendant United States Life Insurance Company in the City of New York's Motion for Partial Summary Judgment (Doc. 172). For the following reasons the motion is denied.[1]

## BACKGROUND

At the summary judgment stage, Plaintiff Kelly Ann Tyler's evidence "is to be believed, and all justifiable inferences are to be drawn in [her] favor." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Disputed facts are "viewed in the light most favorable to" Tyler, the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

Tyler filed this action against United States Life Insurance Company and American General Life Insurance Company (together, "American General"). Tyler

---

[1] Both parties have requested oral argument. The requests are denied. The parties have thoroughly discussed the law and the evidence, and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

alleges breach of a disability insurance contract with American General to provide monthly payments to Tyler in the event that she became "totally disabled." She also alleges a breach of the covenant of good faith and fair dealing by American General, and seeks punitive damages.

Tyler applied for a group long-term disability insurance policy underwritten by American General. The agreement defines "total disability" as "your complete inability to perform the substantial and material duties of your Current Occupation beyond the end of the Elimination Period, and you are not engaged in any other occupation." (Doc. 172 at 3). "Current Occupation" means "[t]he duties of the medical specialty then being practiced or of the occupation being performed immediately prior to the disability." (*Id.*) Tyler practiced as a psychiatrist for the VA in Phoenix.

In March 2012, Tyler submitted a claim to American General for total disability because of chronic pain, fatigue, post-herpetic neuralgia, Mollarets meningitis, and chronic migraines. American General approved the claim after receiving additional information from Tyler. American General notified Tyler that it would periodically request updated medical records in order to reevaluate the ongoing nature of Tyler's disability.

In July 2014, Tyler's case was transferred to Linda Donahue, a case manager at American General. Donahue reviewed the case file and notified Tyler that her claim was still medically supported. Donahue also requested updated records. In those records, Donahue received an updated report from Tyler's primary physician, Dr. Crever, which stated that Tyler was currently physically unable to work because it was hard to predict the flare-ups that caused her headaches. (Doc. 183-3 at 105–06).

After reviewing the updated records and noting apparent inconsistencies (including the fact that Tyler had stopped preventative therapy for migraines while attempting to become pregnant), Donahue sent the case file to Health Direct, Inc. ("HDI")—a third-party medical services provider—for evaluation. During its review of Tyler's records, HDI unsuccessfully attempted to contact some of Tyler's treating

physicians.

HDI's report noted that Tyler continued to suffer from frequent severe headaches, but concluded that "[Tyler's] inability to [return to work] . . . [f]ull [t]ime does not appear supported based on the most recent medical exam findings" from Tyler's rheumatologist and neurologist. (Doc. 173-11 at 2). HDI recommended to Donahue that Tyler's case be referred to an independent medical provider for peer review. Donahue agreed. HDI then sent Tyler's case to CompPartners, Inc., a company that facilitates independent medical reviews. CompPartners sent Tyler's case to Dr. Alberto Ramos, a board-certified neurologist.

Ramos reviewed Tyler's records and concluded that the extent to which Tyler's migraines were disabling was unclear because she had discontinued preventative therapy while trying to become pregnant. He noted that the medications she was still taking, however, had side effects which prevented Tyler from being able to drive. Ramos further noted that the frequency of Tyler's migraines had decreased since she initially filed the claim. Finally, Ramos noted that—according to the medical records—Tyler had "no gross motor or fine motor abnormalities that would limit [Tyler's] ability to work" and that there were also "no side effects from medications that would impair the claimant," (Doc. 173-22 at 3). Ramos concluded that although Tyler was "limited by her chronic migraines," they had improved with some medications and so there were no cognitive or physical limitations affecting Tyler's ability to return to work.

After reviewing the reports from HDI and Dr. Ramos, Donahue concluded that Tyler's claim was no longer medically supported. She sent Tyler a letter informing her that American General had "determined that there is no medical evidence to support any ongoing restrictions or limitations to your activity which would prevent you from performing the material and substantial duties of your regular occupation." (Doc. 173-23 at 3). The letter explained the grounds for the decision and informed Tyler of her right to appeal.

///

- 3 -

In response, Tyler's attorney sent a letter to American General informing them that Tyler's condition had recently worsened, resulting in Tyler's hospitalization. Donahue responded that the termination decision had been based on records received prior to January 1, 2015, and requested any additional medical records after that date. Tyler sent updated records. Donahue sent them back to HDI for further review. HDI reviewed the records and again recommended third-party review, and the updated records were sent back to Dr. Ramos for a second evaluation. This time, Ramos concluded that while Tyler continued to suffer from severe migraines that functionally impaired her work, she could return to former job if given flexible leave when experiencing a migraine (up to two hours at a time, up to four times per month) and a dark, private place to rest when experiencing a migraine at work. Ramos also recommended that Tyler avoid severe work-related stress that could trigger the headaches.

Donahue reviewed the report from Ramos and sent the file to an in-house vocational rehabilitation counselor. The counselor concluded, based on the Ramos reports, that "Dr. Tyler currently does have the physical capacity to perform her Current Occupation" if given the accommodations noted by Ramos. (Doc. 173-33 at 5). Based on the second Ramos report and the report from the vocational counselor, Donahue concluded that Tyler could perform the essential functions of her regular occupation if given the stated accommodations. Donahue sent Tyler a letter to this effect, again informing her of right to appeal. Tyler filed this action instead, and American General now moves for summary judgment on the bad faith and punitive damages claims.

**DISCUSSION**

**I.  Legal Standard**

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Only

disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Parties opposing summary judgment are required to "cit[e] to particular parts of materials in the record" establishing a genuine dispute or "show[] that the materials cited do not establish the absence . . . of a genuine dispute." FED. R. CIV. PRO. 56(c)(1).

American General is not entitled to summary judgment on either the bad faith or punitive damages claims.

**II.     Bad Faith Claim**

    **A.     Standard**

Because of the nature of insurance contracts, insurance companies are required to "play fairly with [their] insured[s]." *Zilisch v. State Farm Mutual Auto Ins. Co.*, 196 Ariz. 234, 237, 995 P.2d 276, 279 (2000) (en banc) (citations and internal quotation marks omitted). Insureds are "entitled to receive the additional security of knowing that [they] will be dealt with fairly and in good faith." *Id.* at 238 (citations and internal quotation marks omitted).

The bad faith inquiry has two parts: (1) did the insurer act unreasonably and (2) did it know, or was it conscious of the fact that it was acting unreasonably? *Deese v. State Farm Mut. Auto. Ins. Co.*, 172 Ariz. 504, 507, 838 P.2d 1265, 1268 (1992) (en banc). This reasonableness test is then applied to two questions. *Bronick v. State Farm Mut. Auto Ins. Co.*, 2013 WL 3716600, *5 (D. Ariz. July 15, 2013). First, the court must determine whether the claim itself was "fairly debatable." *Id. See also Milhone v. Allstate Ins. Co.*, 289 F. Supp. 2d 1089, 1094 (D. Ariz. 2003).

/ / /

Second, courts determine whether the insurer was unreasonable in its claims-handling process. *Bronick*, 2013 WL at *5. If that process was unreasonable, an insurer can be liable for bad faith even if the claim is fairly debatable. *See Zilisch*, 196 Ariz. at 237. If "there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable," the bad faith claim will survive a summary judgment motion. *Id.*

**B.  Analysis**

Summary judgment is not appropriate on Tyler's bad faith claim.

In *Saffle v. Sierra Pacific Power Co.*, 85 F.3d 455 (9th Cir. 1996), the Ninth Circuit concluded that an ERISA plan administrator abused its discretion in administering the plan when it denied benefits to a woman under a disability plan. The plan as written had no limitation on coverage to exclude from disability status those who were able to perform their job with accommodations, yet the administrator denied benefits because the plaintiff could perform her job with the accommodation of elevating her feet. In that case, as in this, the policy language specified that the beneficiary had to be "completely unable" to perform the duties of her regular occupation. This language, the administrator in *Saffle* argued, was sufficient to deny coverage in those cases in which the Plaintiff could perform the work with an accommodation. Yet, the Ninth Circuit rejected the argument noting that the administrator had abused its discretion because denying benefits when accommodations could be made was effectively rewriting the plan. *Id.* at 459–60.

*Saffle* was an ERISA case, not a bad faith case. But, not unlike that case, this case involves disability insurance. Thus, *Saffle's* central conclusion at least suggests that an insurer may not be able to deny benefits when accommodations allow the policyholder to perform her job if the policy language does not explicitly include such a limitation.

Of course, that the contract may require coverage that the Defendant in fact denied does not, in and of itself, meet the requirements for bad faith. And many of the additional arguments which Plaintiff asserts as being sufficient to raise issues of bad faith are based

on unreasonable inferences from the record. But Plaintiff does sufficiently raise the argument that in cases like this, the nature and extent of the proposed accommodation used as a basis for denying coverage might present facts sufficient to raise an issue as to whether the denial was made in good faith. In this case the Plaintiff is a psychiatrist at the VA. Dr. Ramos concluded that the Plaintiff could return to former job if she was given the following three accommodations: (1) flexible leave when experiencing a migraine (up to two hours at a time, up to four times per month) and (2) a dark, private place to rest when experiencing a migraine at work, and (3) the avoidance of severe work-related stress.

Given the demands of Plaintiff's profession as a VA psychiatrist, the nature and extent of the accommodations asserted by Defendant as a sufficient basis on which to deny coverage present an issue of fact as to their reasonableness. A reasonable juror might be able to find that they are not realistically available and thus not a good faith basis on which the Defendant could have denied coverage. As a result, the Defendant's motion on the bad faith claim is denied.

### III. Punitive Damages Claim

Punitive damages require "something more" than simply demonstrating that a tort occurred—in this case, the tort of bad faith. *See Rawlings v. Apodaca*, 151 Ariz. 149, 162, 726 P.2d 565, 478 (1986) (en banc). "The requisite 'something more,' or 'evil mind,' is established by [clear and convincing] evidence that [the] defendant either (1) intended to injure plaintiff or (2) consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others." *Gurule v. Illinois Mut. Life and Cas. Co.*, 152 Ariz. 600, 602, 734 P.2d 85, 87 (1987) (en banc) (citations and internal quotation marks omitted).

"[A] willful and knowing failure to process or pay a claim known to be valid" can be sufficient to support a claim for punitive damages. *Farr v. Transamerica Occidental Life Ins. Co.*, 145 Ariz.1, 8, 699 P.2d 376, 383 (Ariz. Ct. App. 1984). If any reasonable evidence exists that will support punitive damages, "the question of whether punitive

damages are justified should be left to the jury." *Id.* at 9. However, "[t]he evidence . . . must be more than slight and inconclusive such as to border on conjecture." *Id.*

Here, as explained above, there is reasonable evidence from which a jury could conclude that American General acted knowing that its conduct created a substantial risk of harming Tyler by depriving her of disability benefits. A jury could reasonably conclude that American General willfully and knowingly failed to pay a valid claim based on the evidence in the record. Summary judgment is therefore not appropriate.

**IT IS THEREFORE ORDERED** that Defendant United States Life Insurance Company in the City of New York's Motion for Partial Summary Judgment (Doc. 172) is **DENIED**.

Dated this 1st day of November, 2018.

_____
G. Murray Snow
Chief United States District Judge